UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EARL CONNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17 C 7299 |
| v. ) | |
| ) | Judge Rebecca R. Pallmeyer |
| SGT. CHRISTOPH VACEK,[1] Star #2402 and ) | |
| Lt. JAMES R. MASON, Star #17340 ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Earl Conner, who is proceeding *pro se*, brought this 42 U.S.C. § 1983 action against Chicago Police Sergeant Christopher Vacek and Chicago Fire Department Captain James Mason. Plaintiff alleges he was subject to an unlawful search, false arrest and false imprisonment in an incident in which Cameshia Martin called for emergency services after Plaintiff allegedly assaulted her. Defendants have moved for summary judgment. Plaintiff Conner was served with the appropriate Local Rule 56.2 notice and has filed a response. He also asks the court to recruit an attorney for him. For the reasons explained here, the court concludes that Defendants are entitled to summary judgment. Plaintiff's motion for recruitment of counsel is denied.

**I.     Requirements of Local Rule 56.1**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). The court's role is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). To establish that a material fact is undisputed, a party "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other

---

[1]     The correct spelling of this Defendant's first name is Christopher.

materials." Rule 56(c)(1). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the allegations of his complaint and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A party opposing summary judgment must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The requirements established by this court's Local Rule 56.1 are familiar: a party moving for summary judgment must submit a statement of material facts consisting of short numbered paragraphs, each one supported by specific references to the record and other supporting materials. N.D. ILL. L.R. 56.1(a)(3). Defendants have submitted such materials [48]. The Rule requires, further, that a party opposing summary judgment respond to the moving party's numbered paragraph and include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon...." N.D. ILL. L.R. 56.1(b)(3). To ensure that a *pro se* litigant understands these requirements, our Local Rule 56.2 directs that the moving party provide such a litigant with notice of the requirements for responding properly and the consequences for failing to do so. Defendants have served the appropriate notice in this case [49].

Plaintiff responded to Defendants' motion for summary judgment [55], but did not respond to Defendants' proposed statements of fact. Because he is proceeding *pro se*, the court has nevertheless considered the factual assertions he makes in his response, to the extent he has identified supporting evidence in the record or could properly testify himself about the matters asserted. *Antonelli v. Sherrow*, 02 C 8714, 2005 WL 2338813, at *2 (N.D. Ill. Sept. 21, 2005), *aff'd* 246 F.App'x. 381 (7th Cir. 2007); *see Boykin v. Dart*, No. 12 C 4447, 2014 WL 5611466, *6 (N.D.

2

Ill. Nov. 4, 2014) ("Although the court is entitled to demand strict compliance with Local Rule 56.1, it ordinarily affords *pro se* plaintiffs significant leeway in responding to summary judgment filings.").

## II. Facts

On October 3, 2016, Plaintiff resided at 7538 South Phillips, Apartment #3, Chicago, Illinois. (Defendants' Statement of Facts (hereinafter, "Defs.' SOF") [48] ¶ 3. At times, Plaintiff's one-year-old daughter and her mother, Cameshia Martin, stay with Plaintiff at his apartment. *Id.* ¶¶ 4-5. Cameshia sometimes stayed at the apartment with their daughter even when Plaintiff was not at home. *Id.* ¶ 6. Cameshia kept toiletry items, such as a comb, toothbrush and toothpaste at the apartment. *Id.* ¶ 7.

On October 3, 2016, Cameshia and their daughter were at the apartment when Plaintiff came home. *Id.* ¶ 8. Plaintiff and Cameshia got into a verbal argument that escalated into a physical altercation. *Id.* ¶¶ 9-10. Cameshia fled the apartment and called for emergency assistance, leaving their young daughter behind in the apartment with Plaintiff. *Id.* ¶¶ 11, 12.

James Mason, then a lieutenant with the Chicago Fire Department, was dispatched to the area of 7538 South Phillips for medical assistance of a battery victim. *Id.* ¶¶ 13-14. Mason and other Chicago Fire Department personnel arrived outside Plaintiff's apartment at approximately 7:40 p.m. and provided medical treatment to Cameshia on the sidewalk until an ambulance arrived. *Id.* ¶ 15. Approximately five minutes later, an ambulance and paramedics arrived and took over providing medical care for Cameshia. *Id.* ¶ 16. Mason completed his treatment of Cameshia and his involvement in the incident at 7:53 p.m.; he never entered Plaintiff's apartment. *Id.* ¶¶ 17, 34.

At approximately 8:15 p.m. that same night, Christopher Vacek, a sergeant with the Chicago Police Department, arrived at the scene in response to a domestic battery call that reportedly occurred at approximately 7:30 p.m. at 7538 South Phillips, Apartment #3. *Id.* ¶¶ 18-20. When Vacek arrived, other police officers were already there and had spoken with Cameshia. *Id.* ¶ 21. Vacek learned from the Office of Emergency Management Center (OEMC) dispatch call

as well as responding officers that Cameshia reported that Plaintiff beat her with a golf club in front of the presence of their one-year old daughter. *Id*. ¶ 22. Responding police officers advised Vacek that Cameshia had reported that when she fled the apartment, she left her daughter inside. *Id*. ¶ 23.

Vacek knocked on the door of Plaintiff's apartment multiple times, but got no response. *Id*. ¶ 24. As reflected in a recording of the body camera he was wearing, Vacek also spoke with Cameshia about the safety of her daughter while she received medical treatment from the paramedics. *Id*. ¶ 25; DVD recording of October 3, 2016, Exh. F of Defendants' Reply Brief (hereinafter, "Video") [58]. Cameshia reported that Plaintiff had pushed their daughter out of the way in order to reach Cameshia. Defs.' SOF ¶ 26. Concerned for her daughter's safety, Cameshia told Vacek that she wanted him to force entry into the home to retrieve the child, and gave Vacek and other officers permission to enter the apartment. *Id*. ¶¶ 27, 28; Video. When Vacek asked Cameshia for keys to the apartment, she explained that she had left the keys inside the apartment when she fled. *Id*. ¶ 29; Video.

Vacek contacted the Chicago Fire Department for assistance in forcing entry into Plaintiff's apartment. *Id*. ¶ 30. Initially, Vacek again knocked on the apartment door in an effort to speak with Plaintiff, but he did not respond. *Id*. ¶ 31. Chicago Fire Department personnel forced entry into the front door, and Vacek and other Chicago Police officers entered once the door had been forced open, finding Plaintiff and his daughter in a bedroom inside the apartment. *Id*. ¶¶ 32, 35, 36. Plaintiff was placed under arrest by Vacek and responding officers and charged with multiple counts of battery. *Id*. ¶ 37.

### III. Discussion

Plaintiff raises an illegal search, false arrest, and false imprisonment claim against Defendants Mason and Vacek. As explained here, both Defendants are entitled to summary judgment.

### A. Defendant Mason

Defendant Mason was not involved in, nor did he cause, the entry into Plaintiff's apartment or his subsequent arrest. Section 1983 creates a cause of action based on personal liability and predicated on fault; to be held liable, an individual must have caused or participated in a constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Because Mason did not take part in or cause any of the alleged unconstitutional conduct, summary judgment is granted in his favor.

### B. Defendant Vacek

#### 1. Entry into Plaintiff's Residence

Warrantless searches and seizures inside a home are presumptively unreasonable. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The requirement that law enforcement must obtain a warrant to enter a home is subject to certain exceptions, however, such as exigent circumstances presenting a danger to individuals in the home. *Martinez v. City of Chicago*, 900 F.3d 838, 845 (7th Cir. 2018). In determining whether exigent circumstances existed to allow a warrantless entry, the court conducts an objective review, asking whether a reasonable police officer had a reasonable belief that there was a compelling need to act without sufficient time to obtain a warrant. *Id.* The court must consider the totality of the circumstances and facts as they would have appeared to a reasonable person in the position of the police officer, knowing what he saw and heard at the time. *Id.*

The undisputed facts here case demonstrate that exigent circumstances existed to allow a warrantless entry in Plaintiff's apartment based on the possible threat to the minor child alone in the apartment with Plaintiff. Vacek was at Plaintiff's apartment in response to Cameshia's complaint of domestic violence having occurred within the apartment and in the presence of a one-year old child. Cameshia reported to Vacek that during the assault, Plaintiff pushed the child out of the way to get to Cameshia and then struck Cameshia with a golf club. Cameshia also

expressed her concerns for the child's safety to Vacek and told him she wanted police to enter the apartment forcefully to retrieve the baby. Officer Vacek can be heard on the recording, asking Cameshia to confirm that it was her desire that he "kick down the door," and she did so more than once; she acknowledged that she understood that after entering the apartment, Officer Vacek would be arresting Connor for domestic battery. Vacek did try multiple times to speak with Plaintiff without the need for forced entry, but his efforts were to no avail. Based on the totality of the circumstances, a reasonable person in Vacek's position would have believed that there was a compelling need to retrieve the one-year child for the child's safety without sufficient time to obtain a warrant. *See United States v. Venters*, 539 F.3d 801, 807 (7th Cir. 2008) (allegation of neglect of child constituted exigent circumstances to allow warrantless entry); *Martin v. State of Indiana*, No. 12-cv-69-SLC, 2015 WL 4899008, *17 (N.D. Ind. Aug. 17, 2015) (911 call of domestic disturbance constituted exigent circumstance to justify entry without warrant).

Furthermore, a warrantless entry into a home is allowed if voluntary consent has been obtained either from the property owner or from a third person who possesses common authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Common authority over the premises exists if there is mutual use of the property by a person with joint access or joint control for most purposes over said property. *Id.* Thus, a warrantless entry is allowed if a police officer reasonably believes, even if erroneously so, that the person who provided the consent had the authority to do so. *Id.* at 186. As with other Fourth Amendment factual determinations, whether the police officer had a reasonable belief that he or she had consent to enter certain premises is based on an objective standard of whether a reasonable police officer would have believed consent was given based on the facts know to the police officer at that time. *Id.* at 188.

The undisputed facts here show that Cameshia gave her consent to Vacek to forcibly enter the premises to retrieve her daughter and that Vacek reasonably believed that Cameshia had the authority to do so. Vacek knew that Cameshia and Plaintiff had a one-year old daughter, that the

daughter was inside the apartment, and that Cameshia had fled the apartment because Plaintiff had assaulted her. When Vacek asked Cameshia whether she had keys to the apartment, suggesting joint access to the home, she told him she did, but that she had left the keys inside when she fled. Asked whether she consented to entry into the apartment, Cameshia gave express consent.

Plaintiff argues that Cameshia did not have the authority to consent to the entry into the apartment, but undisputed facts show Vacek reasonably believed that she did. Plaintiff now contends that Cameshia did not in fact give Vacek permission to enter, but the evidence he relies on is an unsworn statement, dated several months after this episode, in which Cameshia states she "did not give permission to the Chicago police and Chicago fire department to bust into" Plaintiff's apartment. (Cameshia Martin Statement, Exh. B to Plaintiff's response to Defendants' motion for summary judgment [55].) That unsworn statement does not create a genuine issue of material fact on this issue in the face of body camera video that includes Cameshia's expressed consent for Vacek to enter the apartment. *See e.g., Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."); *Lang v. City of Round Lake Park*, 87 F. Supp. 2d 836, 841 (N.D. Ill 2000) (non-specific accounts of facts were not sufficient to create a genuine issue of fact on this score, in light of the videotape's contemporaneous recording of the events, which belied such facts).

### 2. False Arrest and False Imprisonment

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (citation omitted); *see also Wallace v. Kato*, 549 U.S. 384, 389 (2007) (explaining that false arrest is subset of false imprisonment and that claims may

be analyzed together). "[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007). And, without reason to question the veracity of a witnesses or the report provided, a police officer generally "may rely on the information provided to him by such persons in deciding to make an arrest, without having to conduct an independent investigation into their accounts." *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013). The court does not evaluate probable cause based upon "the facts as an omniscient observer would perceive them," but instead considers the facts "as they would have appeared to a reasonable person in the position of the arresting officer." *Id*. (internal quotations and citations omitted).

The undisputed facts demonstrate that Vacek had probable cause to arrest Plaintiff for domestic battery. Under applicable Illinois law at the time of Plaintiff's arrest, "A person commits domestic battery if he or she knowingly without legal justification by any means: (1) Causes bodily harm to any family or household member; (2) Makes physical contact of an insulting or provoking nature with any family or household member." 720 ILCS 5/12-03.2(a) (West 2014).

At the time of Plaintiff's arrest, Vacek knew that Cameshia reported that Plaintiff had struck her with a golf club and that she was being treated for the resulting injuries. These undisputed establish that Vacek had probable cause to arrest Plaintiff for domestic battery. *See Reynolds v. Jamison,* 488 F.3d 756, 762 (7th Cir. 2007) ("When acting on the complaint of a reasonably believable putative victim, an officer '[is] under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth.'") (alteration in original, citation omitted). Plaintiff argues that Vacek lacked probable cause because charges related to alleged battery of his child were eventually dismissed. The fact that a charge of *aggravated battery of a child under 13* may have been brought and later dismissed does not change the fact that probable cause existed to arrest Plaintiff for *domestic battery* at the time of his arrest. *See Holmes v. Vill.*

of *Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007). ("[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause."); *Beauchamp v. City of Noblesville,* 320 F.3d 733, 745 (7th Cir. 2003) ("acquittals and terminated prosecutions do not [necessarily] lead to liability under § 1983").

Vacek is entitled to summary judgment on Plaintiff's false arrest claim.

If Plaintiff wishes to appeal, he must file a notice of appeal within thirty days of the entry of judgment. *See* FED. R. APP. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this court's ruling to preserve his appellate rights. If he does wish to seek reconsideration, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* FED. R. CIV. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* FED. R. APP. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* FED. R. CIV. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* FED. R. CIV. P. 6(b)(2).

A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. See FED. R. APP. P. 4(a)(4)(A)(vi).

## CONCLUSION

For the reasons stated in this opinion, Defendants' motion for summary judgment [46] is granted. As there is no basis for conclusion that the assistance of counsel could alter the court's analysis, Plaintiff's motion for recruitment of counsel [56] is denied. The Clerk is directed to enter judgment in favor of Defendants.

ENTER:

_____
REBECCA R. PALLMEYER
United States District Judge

DATE: January 17, 2019